ASJZ/2019R00864

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * CRIMINAL NO. SAG 22 cr 138 |
| EDDY RAY BLIZZARD | * (Bank, 18 U.S.C. § 1344; Aggravated |
| | * Identity Theft, 18 U.S.C. § 1028A; |
| Defendant. | * Forfeiture, 18 U.S.C. § 982, 21 U.S.C. |
| | * § 853(p), 28 U.S.C. § 2461(c)) |

USDC- BALTIMORE
'22 APR 13 PM 2:10

******

**INDICTMENT**

**COUNT ONE**
**(Bank Fraud)**

The Grand Jury for the District of Maryland charges that:

**Introduction**

At all times relevant to this Indictment:

1.      Defendant **EDDY RAY BLIZZARD** ("**BLIZZARD**") was a resident of Maryland.

2.      From in or about 2003 through in or about 2017, **BLIZZARD** and was employed at various financial institutions as an investment advisor. **BLIZZARD** held several licenses that allowed him to operate as a registered broker and a registered investment advisor per the Financial Industry Regulatory Authority ("FINRA"). **BLIZZARD** passed several examinations in his field, including the Series 7 General Securities Examination, the Series 26 Investment Company Products/Variable Contracts Principal Examination, and the Series 66 Uniform Combined State Law Examination. By passing these examinations, **BLIZZARD** could work as a broker selling

securities. These licenses also allowed **BLIZZARD** to work as an investment advisor who is paid to provide advice about securities to clients.

3. From 2003-2014, **BLIZZARD** was employed at Bank 1, a Maryland-based FDIC-insured financial institution.

### Blizzard Embezzles R.M.'s Life Savings

4. Victim R.M. was a resident of the state of Maryland and was born in 1944. R.M. received a ninth-grade education and was unable to read or write. Despite the inability to read and write, R.M. had a long and successful career installing commercial grade air conditioning units around the country by memorizing facts and figures and conceptualizing things visually. In order to make extra money, R.M. worked approximately 15-30 hours of overtime per week for decades.

5. In 2003, after approximately 40 years of service with the same commercial air conditioning company, R.M. took a buyout and retired. After an initial six months of retirement, R.M. decided to invest R.M.'s retirement funds in order to provide some inheritance for R.M.'s grandchildren. R.M. sought investment advice from the institution with which he had depository accounts, Bank 1.

6. Sometime after R.M. began investing with Bank 1, R.M. met **BLIZZARD** and began using **BLIZZARD** as his financial adviser at Bank 1. Beginning in or about 2005, R.M. began using **BLIZZARD** independently from Bank 1 as his financial adviser. R.M. gave **BLIZZARD** blank checks so that **BLIZZARD** could fill them out to make investments on behalf of R.M. However, **BLIZZARD** never went to work as an independent financial advisor. R.M. also believed during this time that **BLIZZARD** was paying the mortgage on R.M.'s house out of investment funds.

7. Beginning on about January 2013 through on or about August 2019, **BLIZZARD** caused approximately $1 million to be withdrawn from R.M.'s retirement account and deposited into R.M.'s checking account at Bank 1. **BLIZZARD** did this by electronically transferring funds from R.M.'s retirement account to his checking account, and then writing checks from R.M.'s checking account to accounts controlled by **BLIZZARD**.

8. From on or about April 2016 to April 2019, **BLIZZARD** deposited approximately 112 checks drawn on R.M.'s bank account into various accounts controlled by **BLIZZARD** totaling $848,445. On these checks, **BLIZZARD** often wrote fictitious memo lines for the purported payment. For example, on or about December 6, 2016, **BLIZZARD** wrote a check to himself from R.M.'s bank account with the memo section "Eddy Parents Boat Payment #2." Similarly, on or about January 9, 2017, **BLIZZARD** wrote a check for $25,000 from R.M.'s Bank account and deposited into **BLIZZARD**'s account. The memo section said, "Third Payment Boat and Landscape House #3." A check dated on or about April 2017 made payable to **BLIZZARD** had the memo line "Final Boat & Fish Payment Thank you." R.M. never purchased a boat from **BLIZZARD**'s parents, and R.M. only owned a small boat that he used for fishing.

9. From on or about April 2016 through April 2019, **BLIZZARD** made approximately 861 cash withdrawals from his checking account totaling $513,695.

10. On or about August 2019, R.M. attempted to withdraw $1,000-$1,500 in cash from Bank 1 and was told there was not enough funds in the account. R.M. and his family began to suspect something was wrong when they were subsequently unable to contact **BLIZZARD**.

11. In or about September 2019, R.M.'s son sent a message via social media to **BLIZZARD**'s wife asking what happened to all of R.M.'s money.

12. On September 19, 2019, **BLIZZARD** sent an email to R.M.'s son, stating: "*I'm so sorry for what has transpired and honestly this is a nightmare. I really can't email too much because I am monitored but I made some bad investments that I could never predict would of [sic]ended the way they did. And I tried so hard to get it back for everyone. I would never ever intently hurt [R.M.]. He's been my close friend for almost 12 years now. He's been to all my kids [sic]birthdays, and I have many of times invited him up for the holidays. He is family. I honestly love him like a dad. And I think that's why I have tried to End my life. Failing a friend like him, losing my wife, kids is honestly why I am here right now. I'm going to miss talking to him on a weekly basis so much…*"

13. In or about the fall of 2019, R.M.'s home was put into the foreclosure process because of lack of payment which R.M. thought was being handled by **BLIZZARD**. R.M. also owed approximately $63,000 in federal income tax due to disbursements from R.M.'s retirement accounts that were stolen by **BLIZZARD**.

14. In March 2020, R.M. passed away.

### The Charge

15. From on or about January 2013 through on or about August 2019, in the District of Maryland and elsewhere, the defendant,

**EDDY BLIZZARD,**

knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution and to obtain any of the moneys, funds, credits, assets, and other property owned by and under the custody and control of a financial institution, by means of materially false and fraudulent pretenses, representations and promises, to wit, **BLIZZARD** wrote and cashed checks and made electronic transfers without authorization to transfer approximately $1 million from the

retirement account of R.M. held at Bank 1, in Maryland, to personal accounts controlled by **BLIZZARD**.

18 U.S.C. § 1344.

## COUNT TWO
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 14 of Count One are hereby incorporated by reference as though fully set forth herein.

2. From in or about January 2013 through in or about August 2019, in the District of Maryland, the defendants,

**EDDY BLIZZARD**

did, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), knowingly transfer, possess and use, without lawful authority, a means of identification of another person, to wit: the defendants transferred, possessed, and used the bank account information and signature of "R.M." during and in relation to bank fraud conspiracy in violation of 18 U.S.C. § 1344, as set forth in Count One of the Indictment.

18 U.S.C. § 1028A(a)(1) and (c)(5).

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on the offense charged in Count One of the Indictment.

### Bank Fraud Forfeiture

2. Upon conviction of the offense set forth in Count One, the defendant,

### EDDY BLIZZARD

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such offense, including, but not limited to, a money judgment representing the proceeds he obtained from his participation in the scheme to defraud.

### Substitute Assets

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred, sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

18 U.S.C. § 982
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

_____
Erek L. Barron
United States Attorney

SIGNATURE REDACTED

Foreperson
Date: 4/13/2022